## Curt L. W. Silberschmidt v. Nellie F. Silberschmidt.

### Gen. No. 11,152.

1. SPECIFIC PERFORMANCE—*when, not enforced.* A contract which is not perfectly fair, equal and just in its terms, will not be specifically enforced.

2. ALIMONY—*when decree for, will not be superseded by an anteced-*

*ent contract.* Where, prior to the entry of the decree for alimony, an agreement has been entered into between the parties to the cause which is not embodied in such decree, and such agreement is inequitable, unfair, unreasonable and unjust, it will not be taken as a defense to a proceeding to show cause for the non-payment of alimony under such decree.

3. ALIMONY—*when contracts as to, are contrary to public policy.* Contracts which are of a kind to stimulate divorces, to discourage defenses in divorce suits, or which in any way impose upon the court, are contrary to public policy.

4. ALIMONY—*when decree fixing, is not affected by an antecedent contract.* An agreement made antecedent to a decree fixing alimony which has not received the sanction of the chancellor, does not affect his statutory powers to enforce such decree.

5. CONTRACT—*what merged in.* Negotiations preliminary to the formal written contract are deemed to have been merged therein and are inadmissible in evidence.

Proceeding for contempt. Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in this court at the March term, 1903. Affirmed. Opinion filed February 8, 1904.

**Statement by the Court.** The appellee, Nellie F. Silberschmidt, obtained a degree of divorce from the appellant, Curt L. W. Silberschmidt, in the Circuit Court of Cook County, July 20, 1901, on the ground of abandonment and adultery. The court, by the decree, gave to appellee the custody of her two minor children, Lillian F. and Herman Silberschmidt, and decreed that appellant should pay to her, as alimony, the sum of $65 per month in weekly installments of $15 each, payable on the Wednesday of each week, beginning July 24, 1901, and to continue until the further order of the court.

July 30, 1902, appellee filed a petition in the Circuit Court, in which, after setting up, in substance, the decree of July 20, 1901, she avers that appellant paid her at the rate of $15 per week since July 24, 1901, and up to July 16, 1902, and that, since the last mentioned date, he has failed and refused to pay the amount ordered by the court; and that there is due to her from appellant $5 for each month since July 24, 1901, making a total of $60, and that there is also due, since July 16, 1902, the further sum of $15, making

due in all $75, which appellant refuses to pay; that, prior
to her obtaining said decree of divorce, appellant filed a bill
for divorce in the Circuit Court, and she filed a cross-bill,
praying for separate maintenance; and on a hearing before
Judge Baker, the court found that appellant had no ground
for a divorce, and decreed in her favor for separate mainte-
nance, and that appellant should pay to her $17.50 per
week, of which appellant only paid a part, and there was due
to her, at the time of the entering of the decree of divorce,
the sum of $120, which remains unpaid, and appellee repre-
sents that there is now due to her from appellant the sum
of $195; that she has been informed and believes that ap-
pellant is employed at the Union Stock Yards, and that he
is now receiving a salary of $40 per week. The petition
concludes with a prayer for a rule on appellant to show
cause why he should not pay the amount due petitioner,
and that on default thereof he be held in contempt, and
that, on hearing of the petition, he be decreed to pay $25
per week alimony. The petition is sworn to by appellee.

No rule to show cause appears in the record, but August
9, 1902, appellant filed what purports to be an answer to a
rule to show cause, which commences: "This defendant,
responding to the rule entered upon him herein, on July
30, 1902, to show cause." In this answer appellant admits
the decree of divorce substantially as stated in appellee's
petition, and avers that subsequently to or about the time
of the entry thereof, he and appellee, both anticipating that
appellee would marry Frank S. Alden within a few weeks
after the entry of the decree, entered into a written agree-
ment that appellant should pay to appellee the weekly sum
of $15 for one year, but if appellee should marry within
the year, appellant's obligation to pay said sum to appellee
should cease, but that, thereafter, and until the expiration
of one year from entry of the decree, appellant would pay
to the guardian of his children, weekly, $15, and that in
consideration of the said covenants of appellant, appellee
agreed that, on his compliance with said contract, he
should and would be released from all claims and demands

of appellee, and that he did comply with said contract, and is released from further payment of alimony.

Appellee replied to appellant's answer, alleging, in substance, that she was led to sign the agreement mentioned in appellant's answer by fraud and compulsion, and prays that the same may be declared null and void, etc.

The matter of the petition was heard on the pleadings above stated, and on evidence produced in open court, on October 18, 1902, the court decreed that appellant should pay to appellee $12 on said 18th day of October, and $12 on each and every week thereafter, until the further order of the court, and should also pay to appellee's solicitors, for her, within ten days, the sum of $50 for services rendered by said solicitors, up to the time of filing the decree. From this order or decree the appellant has appealed. The appellant married since the rendition of the decree of divorce, but appellee has remained unmarried.

HAMLINE, SCOTT & LORD, for appellant.

LONGENECKER & LONGENECKER, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel rely mainly for a reversal of the order appealed from on the agreement set up as a defense in appellant's answer to the rule to show cause, which agreement is as follows:

" This Agreement, made and entered into this 22nd day of July, A. D. 1901, by and between Curt L. W. Silberschmidt, of the City of Chicago, County of Cook and State of Illinois, party of the first part, and Nellie F. Silberschmidt, of the same place, party of the second part, Witnesseth:

That, whereas, the said Nellie F. Silberschmidt has this day obtained a decree of divorce from the said Curt L. W. Silberschmidt in the Circuit Court of Cook County, Illinois, in case No. 219,625, by the terms of which decree of divorce said Curt L. W. Silberschmidt is ordered and directed to pay to the said Nellie F. Silberschmidt alimony at the rate of $65 per month, such alimony payable in weekly install-

ments of $15, payment to be made on Wednesday of each week; and,

Whereas, the said party of the first part desires to limit the period of time, during which he shall be required to make payments under said decree of the Circuit Court, and the said party of the second part has consented thereto, upon the conditions and mutual covenants hereinafter contained:

Now, Therefore, it is agreed between the parties hereto as follows:

First. Said Curt L. W. Silberschmidt agrees that he will make said payments of $15 per week promptly on Wednesday of each week for a period of twelve calendar months from and after the date hereof, such payments to be made to the said Nellie F. Silberschmidt at her residence in the City of Chicago.

Second. Should the said Nellie F. Silberschmidt remarry within said period of twelve months, then, from and after the remarriage of the said Nellie F. Silberschmidt, the said Curt L. W. Silberschmidt shall not be held or required to make any payment on account of said allowance of alimony, but, immediately upon the appointment of a guardian of the estate of Lillian F. Silberschmidt and Herman Silberschmidt, children of the parties hereto, the said Curt L. W. Silberschmidt agrees to pay to the said guardian of the estates of said children, the weekly installments which otherwise under this contract would be due and payable to the said Nellie F. Silberschmidt, such installments to be paid to said guardian for the use and benefit of such children.

Third. Upon the considerations aforesaid the said Nellie F. Silberschmidt does hereby agree that, if the said Curt L. W. Silberschmidt shall make the payments to her for the period of one year, as hereinabove provided, or until such time as she shall remarry, that she will, and she does hereby forever release and discharge the said Curt L. W. Silberschmidt from any and all claims and demands of any kind or nature whatsoever, provided that this release shall not be construed to be a release or waiver of the obligation of the said Curt L. W. Silberschmidt to make payments to the guardian of said children, as hereinabove provided; and provided further, that nothing in this agreement contained shall be held or construed to be a release, waiver or discharge of the liability and obligation imposed by law upon the said Curt L. W. Silberschmidt to maintain and support his children.

Fourth. Should the said Nellie F. Silberschmidt re-marry, so that, by the terms of this agreement, any install-ment or installments shall become due and payable to the guardian of said children, and if the said Curt L. W. Silber-schmidt shall fail to make said payments promptly from week to week, as the same accrue and become due, said guardian shall have the right of action against the said Curt L. W. Silberschmidt from week to week for such in-stallments, or, if said guardian shall so elect, shall have, at the expiration of a period of twelve months, a right of action against said Curt L. W. Silberschmidt for the aggre-gate amount of said installments remaining unpaid, and the submission of this contract to any court of competent juris-diction shall be all that shall be necessary to entitle said guardian to recover a judgment against said Curt L. W. Silberschmidt.

·This agreement is executed in duplicate and each dupli-cate copy is hereby made an original.

In witness whereof the parties hereto have hereunto set their hands and seals, at Chicago, Illinois, the day and year first above written.

CURT L. W. SILBERSCHMIDT, (SEAL)
NELLIE F. SILBERSCHMIDT. (SEAL)."

The decree of divorce was entered July 22, 1901, and the agreement is of that date, but it is shown by the evidence that the agreement, although perhaps not reduced to writ-ing and signed until July 22, 1901, was actually made prior to the entry of the decree. Mr. Howe, who was appellee's solicitor in the suit for divorce, called as a witness for ap-pellant, on the hearing of appellee's petition, testified thus as to what occurred in court prior to the entry of the decree of divorce: "I had stated to your Honor, when your Honor directed this to be written up, that there had been an agreement made, and asked your Honor whether it should be incorporated in the decree, and your Honor said it was not necessary, that the agreement would stand for itself, and if it was protection to the parties, or would settle any rights, it would state it, without embodying it in the de-cree." The witness further testified that, after the fore-going colloquy between the court and him, he and Frank Alden and appellee went to his, witness' office, and that he, in the presence of Alden and appellee, dictated the

decree. This evidence shows that the agreement was actu-ally made prior to the entry of the decree of divorce, but how long prior does not appear. By the actual agreement is meant the agreement arrived at between the parties in the negotiation between them, of which the written instrument is merely the evidence. It also appears that the agreement has not received the sanction of the court, because the court, when its attention was first called to the fact that there had been an agreement, declined to permit it to be inserted in the decree, and the order of the court appealed from is contrary to the agreement. It is true that appellee signed the writing, which, as has been stated, is evidence of the agreement; but there is evidence tending to show that she signed it hesitatingly, reluctantly, and under the impression that she had so to do to preserve any of her rights to ali-mony under the decree. She testified, and her testimony in this respect is uncontradicted, that, on the 23rd of July next following her decree of divorce, the son of her solicitor, Mr. Howe, came to her house on his wheel and told her that he had a message for her, and that if she would not go im-mediately to his father's office and sign the contract, her decree would be set aside, and she would not receive any alimony. Lillian Silberschmidt, appellee's daughter, corrob-orated appellee's testimony as to what Mr. Howe's son said to her mother. It is true that Mr. Howe testified that his son was not in any way connected with his office, and that he sent no message to appellee by his son, and Mr. Keller testified that he, Keller, was the only person employed in the office, and that he sent no message to appellee by Mr. Howe's son. It appears by the evidence that Mr. Howe has a son, who at the time in question was a student at the Chicago University. He was not called as a witness. Now, on the hypothesis that neither Mr. Howe nor his clerk, Keller, sent a message to appellee, yet the uncontradicted testimony of appellee and her daughter is that Howe, Jr., made a statement to appellee as above mentioned, and it is apparent that appellee, believing that such message had been sent to her, must have been quite as much impressed

and influenced by it as if it had been authorized.    Appellee testified that when she received the message she cried and did not know what to do; but that she went to the office and found there Mr. Keller.    Mr. Howe was then absent from the city.    He testified that he left the city the afternoon of the day the decree was entered and did not return until the Friday of the next week.    The decree was entered Saturday, July 20, 1901.    Appellee testified that she asked Mr. Keller if she had to sign it, and he thought she ought to do so, and she signed.    Keller testified, on cross-examination :  "She hesitated about signing it.    She cried and laughed at spells.    I didn't tell her Mr. Howe said that it would have to be signed.    I said it had to be signed.    I told her she was expected to sign it.    She signed it while I was in the telephone box.    Mr. Howe's son was in and out, as he comes down town sometimes.    He was not coming down on Saturdays.    He was not employed in the office.    He would come in once in a while.    Knew from what I heard that Mr. Howe's folks, Mrs. Howe and Mrs. Silberschmidt visited each other."    In this connection Mr. Howe's testimony is noticeable, namely :   " If he went out there and delivered any message, he did not deliver any message from me, or from anybody in my office."    We think Mr. Keller's testimony conclusive that appellee was in a very perturbed and distressed mental condition when she signed the agreement; and the testimony of appellee and her daughter Lillian shows that she signed it under the impression that if she refused so to do, she would be wholly deprived of alimony.    Appellant, in his answer to the rule to show cause, sets up the agreement as cause why he should be relieved from the further payment of alimony.    Appellant's counsel contend strenuously that the agreement is valid, which we think not free from doubt.    But even though its validity is conceded, this is not sufficient to warrant its enforcement.

Appellant asks a court of equity, in effect, to compel appellee to abide by the written agreement, and the equitable principles which prevail when the court is asked to compel

specific performance of a contract are applicable. "It is a settled principle that a specific performance of a contract is not to be decreed, as a matter of course, because a legal contract is shown to exist; but it rests entirely in the discretion of the court, upon a view of all the circumstances." C. & A. R. R. Co. v. Schoeneman, 90 Ill. 258, 267, citing cases. Pomeroy, commenting on the right to specific performance of a contract, says: " The contract must be perfectly fair, equal and just in its terms and circumstances." 3 Pomeroy's Eq. Jurisprudence, sec. 1405, p. 448. Such is the rule in this state. In Lear v. Chouteau, 23 Ill. 39, the court say: "In order to induce a court of equity to enforce specifically a contract, it must be founded upon a good consideration; it must be equitable, fair and just." C., B. & Q. R. R. Co. v. Reno, 113 Ill. 34, pp. 43-44, and Frisby v. Balance, 4 Scam. 286, 299, are to the same effect.

Is the agreement in question equitable, fair, reasonable and just? The court had decreed that appellant should pay to appellee $65 per month, in weekly installments of $15 each, payable on Wednesday of each week, "to continue until the further order of the court," and the court in view of this reservation and the statute, to which reference will hereafter be made, had ample power to continue the allowance so long as appellant should live, and appellee should remain unmarried, or to increase or decrease the allowance, having in view the circumstances of appellant and the necessities of appellee, and there can be no doubt that it would be the duty of the court to continue the allowance, or modify it, as circumstances might seem to require, as long as appellant should live and appellee should remain unmarried. By the third paragraph of the agreement in question, as construed by appellant and his counsel, appellant is released from the payment of any alimony to appellee after the expiration of one year from the date of the agreement, even though appellee should remain unmarried, and however necessitous her financial circumstances might become, and however ample appellant's ability to pay alimony might be. We think the agreement, so construed, is manifestly inequitable, unfair, unreasonable and unjust.

Silberschmidt v. Silberschmidt.

It appeared by the testimony of appellee's solicitor in the divorce suit, called as a witness by appellant, that the agreement was made pending the suit and prior to the decree. A learned author, commenting on such agreements, says: " But if the contract is of a sort to stimulate the divorce, to discourage any defense, or in any way to impose upon the court, it will be void; for example, it will be void if so framed as to have effect only on condition that a divorce is granted without alimony. Hence practically, and almost and sometimes quite as a matter of law, an agreement of this sort should be laid before the judge, when, to an extent not readily definable, it will be ill if he dissents, and good if he approves." 2 Bishop on Marriage, Divorce and Separation, sec. 705. The courts do not favor, but rather incline against such agreements, as tending to collusion between the parties, and also tending to facilitate divorces. Hamilton v. Hamilton, 89 Ill. 349; Martin v. Martin, 65 Ia. 255; Moon v. Baum, 58 Ind. 194; Daggett v. Daggett, 5 Paige, 509. In Hamilton v. Hamilton, the court, after holding that, in this state, a wife may lawfully contract with her husband, say : " The majority of the court, however, are of opinion that the contract set out in the declaration is, in its essence and character, against public policy, and that it must be held invalid upon that ground. While divorces are authorized by law, they ought not to be encouraged. In this contract there is no express agreement that the husband would not resist the application for a divorce, or that he would consent to a divorce, still it is thought that to permit such a contract as this to be enforced in the courts would open a door for the attainment of divorces by collusion, and upon this ground the decision of the court in sustaining the demurrer to the declaration ought to be sustained." In Martin v. Martin, the court say: " The courts, however, will, in every case, scrutinize the transaction very closely, and the contract will not be enforced unless it appears to have been fairly entered into, and to be reasonably just and fair to the wife." 65 Ia. 257. In Moon v. Baum, the court say: " It is not competent

for a husband and wife to make a valid agreement as to alimony, during the pendency of a suit for divorce, independent of the sanction of a decree for divorce." The opinion of Chancellor Walworth in Daggett v. Daggett, *supra*, is to the same effect. Hurd's Rev. Stat. 1901, section 18, chapter 40, p. 681, is as follows:

" When a divorce shall be decreed, the court may make such order touching the alimony and maintenance of the wife, the care, custody and support of the children, or any of them, as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just; and in case the wife be complainant, to order the defendant to give reasonable security for such alimony and maintenance, or may enforce the payment of such alimony and maintenance in any other manner consistent with the rules and practice of the court. And the court may, on application, from time to time, make such alterations in the allowance of alimony and maintenance, and the care, custody and support of the children, as shall appear reasonable and proper."

We are of opinion that, in view of this section and the reservation in the decree, "until the further order of the court," the agreement executed by the parties, unsanctioned by the court, could not control the court or be an obstacle to the exercise by it of the powers conferred by section 18, and that the court was as untrammeled in the premises as if said agreement had not been made, and we think that the court very properly disregarded the agreement.

Counsel object that the court erred in refusing to allow the witness Howe to be examined as to the circumstances under which the contract was made, and that it was made in contemplation of the marriage of appellee. The question put to the witness Howe was: "State what Mrs. Silberschmidt said to you after the entry of this decree, if anything, with reference to a contemplated marriage on her part?" The court ruled against evidence of this sort, saying: "Well, she has not married." The exclusion of the evidence was not error. The following also occurred:

Mr. Schooler: " I would like to show—I can show that this entire matter was talked over between Mrs. Silber-

schmidt and Mr. Howe, and Mrs. Silberschmidt wanted a lump sum paid to her, and that Mr. Silberschmidt, through his attorney, refused to pay a lump sum. And that they got together upon this agreement; she insisted upon the payment of a lump sum, in consideration for which she would make an agreement waiving any further rights, and Mr. Silberschmidt refused to pay this lump sum, and this agreement was finally made."

The Court: "Is that material at all? This agreement has got to stand or fall by its terms, and what led up to it, I don't think is material."

We concur in the ruling of the court.

Counsel for appellant do not, in their argument, make any objection to the allowance for services of appellee's solicitors.

The decree will be affirmed.

*Affirmed.*